Jonathan A. Stieglitz, Esq. (SBN 278028)
THE LAW OFFICES OF JONATHAN A. STIEGLITZ
11845 Olympic Blvd., Suite 800
Los Angeles, CA 90064
Telephone: (323) 979-2063
Facsimile: (323) 488-6748
Email: jonathan@stieglitzlaw.com

Jonathan M. Rotter (SBN 234137)
Natalie S. Pang (SBN 305886)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: jrotter@glancylaw.com
Email: npang@glancylaw.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEACH DISTRICT SURGERY CENTER, L.P., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INS. CO., and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>Complaint for:<br><br>1. Fraud<br>2. Negligent Misrepresentation<br>3. Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br><br>JURY TRIAL DEMANDED |

Plaintiff Beach District Surgery Center, L.P. (hereinafter referred to as "Plaintiff" or "Medical Provider"), individually and on behalf of all others similarly situated, complains and alleges:

## NATURE OF THE ACTION

1.      This is a class action lawsuit against Cigna Health and Life Ins. Co. ("Cigna") for misrepresenting the nature of payments it would make to out-of-network California medical providers that had agreements with a complementary network called Multiplan.

2.      Plaintiff is a surgery center that provides medical services to patients in California.  Plaintiff, like many other California medical providers, is not contracted with Cigna, meaning it has and had no preferred provider contracts or other such standing written contracts with Cigna setting the rates of pay for services rendered to patients covered by Cigna health insurance.  This is also referred to as being "out-of-network" or "non-participating" medical provider with respect to patients covered by Cigna.  While Plaintiff is not contracted with Cigna, like many other California medical providers, it was and is contracted with a complementary network called Multiplan.

3.      Cigna imprints a Multiplan logo on its insureds' insurance cards only for those eligible to receive discounted rates when using an out-of-network non-participating medical provider or facility that participates in the Multiplan Network. The Multiplan logo is intended to and does represent to patients and out-of-network medical providers, including Plaintiff, that Cigna will apply the payment rates pursuant to the provider's Multiplan agreement, if the provider has such an agreement. However, Cigna's representations in this regard are false.

4.      Cigna and/or Multiplan have advertised to patients, Plaintiff and other medical providers throughout the state and country that when a patient or medical provider sees the symbol for Multiplan on a patient's insurance card, the patient and medical provider can be assured that the medical provider's Multiplan agreement will

be utilized, thus providing benefits to all parties—patient, medical provider and insurer.

5.    Under Plaintiff's Multiplan agreement, Plaintiff is to be paid 95% of billed charges for any and all medical services it renders to patients with Cigna health insurance, less any co-payment, deductible, and/or co-insurance, if any.

6.    Plaintiff and other medical providers in California justifiably and reasonably relied on the representation that the Multiplan logo's placement on a patient's insurance card meant that Cigna would pay for the insured's medical services at the rates applicable under their Multiplan agreement.

7.    Plaintiff has rendered medical services to numerous patients with Cigna health insurance that have insurance cards bearing the Multiplan logo.  However, when Plaintiff submitted claims to Cigna for medical services rendered to such patients, Cigna did not pay these claims at the rates provided by the Multiplan agreement despite confirming that Multiplan rates were applicable—instead, Cigna paid far less, thus damaging Plaintiff.

8.    Plaintiff is informed and believes and thereon alleges that Cigna has similarly misrepresented and underpaid other out-of-network California medical providers with a Multiplan agreement, causing them damage.

## THE PARTIES

9.    Plaintiff Medical Provider is and at all relevant times was a medical corporation organized and existing under the laws of the State of California.  Plaintiff is and at all relevant times was in good standing under the laws of the State of California.

10.    Defendant Cigna Health and Life Ins. Co. is and at all relevant times was licensed to do business in and is and was doing business in the State of California, as an insurer.  Plaintiff is informed and believes that Defendant is licensed by the Department of Managed Health Care and/or the Department of Insurance to transact the business of insurance in the State of California.  Defendant is, in fact, transacting

the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.    Cigna's headquarters are located in Bloomfield, Connecticut.

11.    The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.    Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to Plaintiff.    Plaintiff will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it. Defendants DOES 1 through 10, inclusive collectively with Defendant Cigna Health and Life Ins. Co. are referred to as "Defendants."

12.    At all times herein mentioned, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants, and were at all times acting within the purpose and scope of said agency and employment, and each Defendant has ratified and approved the acts of their agent.    At all times herein mentioned, Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Plaintiff, other Class members, and their patients.[1]

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full names, dates of treatment and policy information pertaining to the Patient is being withheld.    This information will be disclosed to Defendants upon their request.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) the matter in controversy exceeds the sum or value of $75,000 and the parties are citizens of different States, and (b) this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees and costs, and because Plaintiff and/or at least one Class member is a citizen of a state different from Defendants.  This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court may exercise jurisdiction over Defendants because they have continuous and systematic contacts with this District, do substantial business in this State and within this District, and engage in the unlawful practices alleged in this complaint in this District so as to subject themselves to personal jurisdiction in this District and thus rendering the exercise of jurisdiction by this Court proper and necessary.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this District and substantial acts in furtherance of the alleged improper conduct occurred within this District.

## FACTUAL ALLEGATIONS[2]

16.     All of the claims asserted in this complaint arise out of Defendants' representations and communications to Plaintiff.  Plaintiff is informed and believes and thereon alleges that Defendants made substantially similar representations and communications regarding the nature of payments they would make to other out-of-

---

[2] Plaintiff provides specific facts for just five examples which are representative of all the claims it submitted to Defendants for medical services rendered to patients with Cigna health insurance who had insurance cards bearing the Multiplan logo.  Based on information and belief, Plaintiff thereon alleges these examples are also representative of the misrepresentations and underpayments by Defendants as to the other Class members' claims.

network California medical providers that had a Multiplan agreement.

17.     Plaintiff is and was informed, based on Defendants' representations and communications, that each patient was insured by Defendants either as subscribers to coverage or dependents of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by Defendants.

18.     Plaintiff is and was informed that each patient entered into a valid insurance agreement with Defendants for the specific purpose of ensuring that they would have access to medically necessary treatments, care, procedures and surgeries by medical practitioners like Plaintiff and ensuring that Defendants would pay for the health care expenses incurred by each patient.

19.     Plaintiff is and was informed that Defendants received, and continue to receive, valuable premium payments from each patient and/or other consideration from the patient under the subject policies applicable to each patient.

20.     Procedures performed by Plaintiff on each patient are not merely for the benefit of patients, but, rather, for Defendants as well. Defendants receive valuable premium payments from each patient that would cease to be made were each patient unable to receive services from providers of medicine like Plaintiff. Additionally, patients would seek out different insurers if they were unable to obtain the medical services that they desired because of those insurers' unwillingness to pay for said medical services.

21.     Plaintiff and the doctors who performed surgeries or procedures upon the patients were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other such standing, written contracts with Defendants setting their rates of pay for services rendered, prior to the date that the surgeries or procedures were performed upon each patient.

22.     Plaintiff did and does have an agreement with a complementary network called Multiplan.

23.     According to the agreement, Plaintiff is to be paid 95% of its billed charges for any and all services. "Client specific rates for Aetna, Cigna and Great West shall be equal to ninety-five (95%) percent of Facility's Billed Charges, less any co-payment, Deductible, and/or Co-insurance, if any, specified in the Participant's Benefit Program."

24.     There are instances in which Multiplan or a medical provider will create a list of payors of insurance to exclude from using a Multiplan agreement.

25.     Plaintiff negotiated the Multiplan agreement but as Plaintiff found the terms of the agreement acceptable in all instances, Plaintiff did not ask for the agreement to not apply to certain payors.

26.     Multiplan also never represented to Plaintiff that there would be any limitation on the applicability of the agreement.

27.     Multiplan at all times represented to Plaintiff that its symbol on patient insurance cards was a representation from a payor of insurance to patients and Plaintiff that the payor of insurance was going to process Plaintiff's medical bills in accordance with the Multiplan agreement.

28.     Multiplan is utilized by a number of insurers including Defendants to help reduce medical costs to patients.

29.     Defendants did and do have an agreement with Multiplan.

30.     Defendants did and do have a longstanding relationship with Multiplan. Defendants specifically direct patients to Multiplan to see if the medical provider is contracted with Multiplan. *See* Cigna.com, Multiplan/Out-of-Network Directory *https://www.cigna.com/hcpdirectory/multiplan* (last visited May 27, 2022).

31.      A search using the tool described above shows that Plaintiff is a medical provider in good standing with Multiplan. *See* Multiplan.com, Provider Search, *https://www.multiplan.com/webcenter/portal/ProviderSearch* (last visited May 27, 2022).

---

32.     From 2019 to 2021, Medical Provider provided medical facilities for no less than 40 medical procedures for 26 patients whose insurance cards prominently displayed a Multiplan symbol.

33.     Prior to performing each procedure, each patient provided to Medical Provider a copy of their insurance card. Each insurance card prominently displayed a symbol for Defendants and a symbol for Multiplan.

34.     By putting the Multiplan symbol on the same insurance card bearing Defendants' symbol, Defendants intended that Medical Provider and each patient would believe that Defendants utilized the Multiplan Network and would make payments utilizing the Multiplan Network.

35.     Plaintiff reviewed each patient's insurance card and based on the Multiplan symbol on each card, agreed to and did provide medical services to each patient with the understanding that Defendants would compensate Medical Provider in accordance with Medical Provider's Multiplan Agreement.

36.     For all 40 payment claims Plaintiff asserts herein, at no time did Defendants represent that they would not be paying for services in accordance with Multiplan.

37.     Medical Provider justifiably and actually relied and provided services based on Defendants' representations on patients' insurance cards that Multiplan would be utilized in determining how Medical Provider would be paid.

38.     At no time have Defendants ever expressed to Plaintiff that they would no longer be utilizing the Multiplan Network in the fashion advertised by Multiplan and/or Defendants.

39.     Following each procedure, Medical Provider submitted to Defendants any and all billing information required by Defendants.

40.     Defendants processed each of Medical Provider's claims but failed to make proper payment in accordance with Plaintiff's Multiplan contract.

41.    However, on each remittance sheet or explanation of benefits ("EOB"), Defendants represented that they had applied a Multiplan contractual discount.

42.    Other than the Multiplan agreement, Plaintiff does not have a contract with any insurer that would provide Defendants with a basis for stating that the claim could be processed based on a contract.

43.    Also, on nearly every EOB, Defendants represented that they actually used Multiplan to pay for the claim, but despite affirming the representation from the insurance card, Defendants still failed to pay in accordance with Plaintiff's Multiplan agreement.

44.    Plaintiff in all cases appealed to Defendants to obtain proper payment in accordance with Plaintiff's Multiplan contract.   In all instances, Defendants still refused to make the appropriate payment.

45.    As of the date of this complaint, Defendants have still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from Defendants.

**Example Patient 1**

46.    On November 11, 2019, Patient 1 received a surgery at Plaintiff's medical facility.

47.    On November 7, 2019, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendants to Patient 1 to be shown to Plaintiff and other Class members upon seeking medical services.

48.    Prominently displayed on the insurance card is and was a symbol for Multiplan.

49.    Defendants' purpose in displaying the symbol was to communicate that if Plaintiff or other Class members had an agreement with Multiplan, Defendants would utilize that agreement in processing and paying for the medical services provided to Patient 1.

50.    Plaintiff had and has an agreement with Multiplan; thus, Plaintiff determined to provide medical services to Patient 1, reasonably relying on Defendants' representation that Plaintiff's Multiplan agreement constituted the manner in which Defendants pay for the medical services received by Patient 1.

51.    Defendants did not reference any issue that would put Plaintiff on notice of the fact that Defendants would not utilize the Plaintiff's Multiplan agreement in paying for services rendered to Patient 1.

52.    Despite representing that the payment method is and was based on Plaintiff's Multiplan agreement, Defendants knew or should have known that they would not be paying Medical Provider based on the Multiplan Agreement.

53.    Plaintiff relied and provided services based on the clear representation on the insurance card Defendants provided to Patient 1 that Multiplan would be used to determine the pricing for the medical services.

54.    By Defendants' representations, Defendants intended for Plaintiff to provide services to Patient 1.

55.    Defendants intended for Medical Provider to rely on its representations that medical services it provided to Patient 1 would be paid in accordance with the Multiplan agreement.

56.    Plaintiff submitted to Defendants any and all billing information required by Defendants, including a bill for $44,550.00.

57.    Following the procedure, Plaintiff submitted its claims to Defendants accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of Plaintiff's claims were submitted to Defendants using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to Defendants any and all billing information and any and all additional information requested by Defendants.

---

58.    Defendants processed the bill and made a payment of $9,882.36 along with sending an EOB.

59.    Defendants confirmed in the EOB that they had used Multiplan to determine the amount paid for the medical services.

60.    However, despite claiming to use Multiplan to price the claim, Defendants paid far less than the amount owed according to Plaintiff's Multiplan Agreement.

61.    Defendants failed to make payment in accordance with the representations and promises they made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

62.    Defendants knew that by putting the Multiplan symbol on their insurance card that Plaintiff and other Class members would rely on that information, believing that the manner in which Defendants pay for medical services would be based on Multiplan.

63.    Defendants knew that they would not be paying based on Plaintiff's Multiplan Agreement.

64.    Defendants made these misrepresentations regarding the manner of payment with the intent of obtaining medical services for their insured and in so doing intended to and did induce Plaintiff to provide services.

65.    As of the date of this complaint, Defendants have still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from Defendants.

**Example Patient 2**

66.    On December 3, 2019, Patient 2 received a surgery at Plaintiff's medical facility.

67.    On November 7, 2019, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendants to Patient to be shown to Plaintiff and other Class members upon seeking medical services.

68. Prominently displayed on the insurance card is and was a symbol for Multiplan.

69. Defendants' purpose in displaying the symbol was to communicate that if Plaintiff and other Class members had an agreement with Multiplan, Defendants would utilize that agreement in processing and paying for the medical services provided to Patient 2.

70. Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient 2, trusting Defendants' representation that Plaintiff's Multiplan agreement is the manner in which Defendants pay for the medical services received by Patient 2.

71. Defendants did not reference any other issue that would put Plaintiff on notice of the fact that Defendants would not utilize the Plaintiff's Multiplan agreement.

72. Despite representing that the payment method is and was based on Plaintiff's Multiplan agreement, Defendants knew or should have known that they would not be paying Medical Provider based on the Multiplan Agreement.

73. Plaintiff relied and provided services based on the clear representation on the insurance card Defendant provided to Patient 2 that Multiplan would be used to determine the pricing for the medical services.

74. By Defendants' representations, Defendants intended for Plaintiff to provide services to Patient 2.

75. Defendants intended for Medical Provider to rely on its representations that medical services it provided to Patient 2 would be paid in accordance with the Multiplan agreement.

76. Plaintiff submitted to Defendants any and all billing information required by Defendants, including a bill for $46,117.50.

77. Following the procedure, Plaintiff submitted its claims to Defendants accompanied with lengthy operative reports, chart notes, and other medical records.

No matter whether large or small, all of Plaintiff's claims were submitted to Defendants using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to Defendants any and all billing information and any and all additional information requested by Defendants.

78.    Defendants processed the bill and made a payment of $11,812.27 along with sending an EOB.

79.    Defendants confirmed in the EOB that they had used Multiplan to determine the amount paid for the medical services.

80.    However, despite claiming to use Multiplan to price the claim, Defendants paid far less than the amount owed according to Plaintiff's Multiplan Agreement.

81.    Defendants failed to make payment in accordance with the representations and promises it made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

82.    Defendants knew that by putting the Multiplan symbol on its insurance card that Plaintiff and other Class members would rely on that information believing that the manner in which Defendants pay for medical services would be based on Multiplan.

83.    Defendants knew that they would not be paying based on Plaintiff's Multiplan Agreement.

84.    Defendants made these misrepresentations regarding the manner of payment with the intent of obtaining medical services for their insured and in so doing intended to and did induce Plaintiff to provide services.

85.    As of the date of this complaint, Defendants have still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from Defendants.

## Example Patient 3

86. On January 14, 2020, Patient 3 received a surgery at Plaintiff's medical facility.

87. On January 7, 2020, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendants to Patient 3 to be shown to Plaintiff and other Class members upon seeking medical services.

88. Prominently displayed on the insurance card is and was a symbol for Multiplan.

89. Defendants' purpose in displaying the symbol was to communicate that if Plaintiff and other Class members had an agreement with Multiplan, Defendants would utilize that agreement in processing and paying for the medical services provided to Patient 3.

90. Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient 3, trusting Defendants' representation that Plaintiff's Multiplan agreement is the manner in which Defendants pay for the medical services received by Patient 3.

91. Defendants did not reference any issue that would put Plaintiff on notice of the fact that Defendants would not utilize the Plaintiff's Multiplan agreement in paying for services rendered to Patient 3.

92. Despite representing that the payment method is and was based on Plaintiff's Multiplan agreement, Defendants knew or should have known that they would not be paying Medical Provider based on the Multiplan Agreement.

93. Plaintiff relied and provided services based on the clear representation on the insurance card Defendants provided to Patient 3 that Multiplan would be used to determine the pricing for the medical services.

94. By Defendants' representations, Defendants intended for Plaintiff to provide services to Patient 3.

95.     Defendants intended for Medical Provider to rely on its representations that medical services it provided to Patient 3 would be paid in accordance with the Multiplan agreement.

96.     Plaintiff submitted to Defendants any and all billing information required by Defendants, including a bill for $44,550.00.

97.     Following the procedure, Plaintiff submitted its claims to Defendants accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of Plaintiff's claims were submitted to Defendants using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to Defendants any and all billing information and any and all additional information requested by Defendants.

98.     Defendants processed the bill and made a payment of $16,208.43 along with sending an EOB.

99.     Defendants confirmed in the EOB that they had used Multiplan to determine the amount paid for the medical services.

100.     However, despite claiming to use Multiplan to price the claim, Defendants paid far less than the amount owed according to Plaintiff's Multiplan Agreement.

101.     Defendants failed to make payment in accordance with the representations and promises they made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

102.     Defendants knew that by putting the Multiplan symbol on their insurance card that Plaintiff and other Class members would rely on that information, believing that the manner in which Defendants pay for medical services would be based on Multiplan.

103.     Defendants knew that they would not be paying based on Plaintiff's Multiplan Agreement.

104.   Defendants made these misrepresentations regarding the manner of payment with the intent of obtaining medical services for their insured and in so doing intended to and did induce Plaintiff to provide services.

105.   As of the date of this complaint, Defendants have still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from Defendants.

### **Example Patient 4**

106.   On January 17, 2020, Patient 4 received a surgery at Plaintiff's medical facility.

107.   On January 13, 2020, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendants to Patient 4 to be shown to Plaintiff and other Class members upon seeking medical services.

108.   Prominently displayed on the insurance card is and was a symbol for Multiplan.

109.   Defendants' purpose in displaying the symbol was to communicate that if Plaintiff and other Class members had an agreement with Multiplan, Defendants would utilize that agreement in processing and paying for the medical services provided to Patient 4.

110.   Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient 4, trusting Defendants' representation that Plaintiff's Multiplan agreement is the manner in which Defendants pay for the medical services received by Patient 4.

111.   Defendants did not reference to any issue that would put Plaintiff on notice of the fact that Defendants would not utilize the Plaintiff's Multiplan agreement.

112.   Despite representing that the payment method is and was based on Plaintiff's Multiplan agreement, Defendants knew or should have known that they would not be paying Medical Provider based on the Multiplan Agreement.

113. Plaintiff relied and provided services based on the clear representation on the insurance card Defendants provided to Patient 4 that Multiplan would be used to determine the pricing for the medical services.

114. By Defendants' representations, Defendants intended for Plaintiff to provide services to Patient 4.

115. Defendants intended for Medical Provider to rely on their representations that medical services it provided to Patient 4 would be paid in accordance with the Multiplan agreement.

116. Plaintiff submitted to Defendants any and all billing information required by Defendants, including a bill for $34,155.00.

117. Following the procedure, Plaintiff submitted its claims to Defendants accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of Plaintiff's claims were submitted to Defendants using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to Defendants any and all billing information and any and all additional information requested by Defendants.

118. Defendants processed the bill and made a payment of $3,708.85 along with sending an EOB.

119. Defendants confirmed in the EOB that they had used Multiplan to determine the amount paid for the medical services.

120. However, despite claiming to use Multiplan to price the claim, Defendants paid far less than the amount owed according to Plaintiff's Multiplan Agreement.

121. Defendants failed to make payment in accordance with the representations and promises they made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

122.   Defendants knew that by putting the Multiplan symbol on their insurance card that Plaintiff and other Class members would rely on that information, believing that the manner in which Defendants pay for medical services would be based on Multiplan.

123.   Defendants knew that they would not be paying based on Plaintiff's Multiplan Agreement.

124.   Defendants made these misrepresentations regarding the manner of payment with the intent of obtaining medical services for their insured and in so doing intended to and did induce Plaintiff to provide services.

125.   As of the date of this complaint, Defendants have still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from Defendants.

## **Example Patient 5**

126.   On February 5, 2020, Patient 5 received a surgery at Plaintiff's medical facility.

127.   On January 29, 2020, prior to providing medical services, Plaintiff received a copy of the insurance card specifically provided by Defendants to Patient 5 to be shown to Plaintiff and other Class members upon seeking medical services.

128.   Prominently displayed on the insurance card is and was a symbol for Multiplan.

129.   Defendants' purpose in displaying the symbol was to communicate that if Plaintiff and other Class members had an agreement with Multiplan, Defendants would utilize that agreement in processing and paying for the medical services provided to Patient 5.

130.   Plaintiff had and has an agreement with Multiplan and so Plaintiff determined to provide medical services to Patient 5, trusting Defendants' representation that Plaintiff's Multiplan agreement is the manner in which Defendants pay for the medical services received by Patient 5.

131.    Defendants did not reference any issue that would put Plaintiff on notice of the fact that Defendants would not utilize the Plaintiff's Multiplan agreement.

132.    Despite representing that the payment method is and was based on Plaintiff's Multiplan agreement, Defendants knew or should have known that they would not be paying Medical Provider based on the Multiplan Agreement.

133.    Plaintiff relied and provided services based on the clear representation on the insurance card Defendants provided to Patient 5 that Multiplan would be used to determine the pricing for the medical services.

134.    By Defendants' representations, Defendants intended for Plaintiff to provide services to Patient 5.

135.    Defendants intended for Medical Provider to rely on their representations that medical services it provided to Patient 5 would be paid in accordance with the Multiplan agreement.

136.    Plaintiff submitted to Defendants any and all billing information required by Defendants, including a bill for $55,378.34.

137.    Following the procedure, Plaintiff submitted its claims to Defendants accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of Plaintiff's claims were submitted to Defendants using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Plaintiff submitted to Defendants any and all billing information and any and all additional information requested by Defendants.

138.    Defendants processed the bill and made a payment of $6,431.37 along with sending an EOB.

139.    Defendants confirmed in the EOB that they had used Multiplan to determine the amount paid for the medical services.

140.   However, despite claiming to use Multiplan to price the claim, Defendants paid far less than the amount owed according to Plaintiff's Multiplan Agreement.

141.   Defendants failed to make payment in accordance with the representations and promises it made to Plaintiff that the manner of payment would be based on Plaintiff's Multiplan Agreement.

142.   Defendants knew that by putting the Multiplan symbol on their insurance card that Plaintiff and other Class members would rely on that information believing that the manner in which Defendant pay for medical services would be based on Multiplan.

143.   Defendants knew that they would not be paying based on Plaintiff's Multiplan Agreement.

144.   Defendants made these misrepresentations regarding the manner of payment with the intent of obtaining medical services for their insured and in so doing intended to and did induce Plaintiff to provide services.

145.   As of the date of this complaint, Defendants have still refused to make the appropriate payment to Plaintiff and Plaintiff is entitled to that payment from Defendants.

## CLASS ALLEGATIONS

146.   Plaintiff brings this action on behalf of itself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

All California medical providers that were not contracted with Cigna and were contracted with Multiplan that provided medical services to patients with Cigna health insurance cards bearing the Multiplan symbol and that were underpaid by Cigna relative to their Multiplan agreements.

147.   Excluded from the Class are: (i) Defendants; (ii) Defendants' employees, affiliates, agents, officers and directors.

148.   **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable.   While the exact number and identity of individual members of the Class is unknown currently, such information being in the sole possession of Defendants and/or third parties and obtainable by Plaintiff only through discovery, Plaintiff believes, and on that basis alleges, that the Class consists of at least hundreds of persons or entities.   The number of Class members can be determined based on Defendants' and/or other third parties' records.

149.   **Commonality:** Common questions of law and fact exist as to all members of the Class.   These questions predominate over questions affecting individual Class members.   These common legal and factual questions include, but are not limited to:

      a.   Whether Defendants misrepresented the nature of and the rate of payment to be made under the Multiplan agreements;

      b.   The manner(s) in which Defendants did so;

      c.   Whether Plaintiff and Class members have suffered damages, and if so, the nature and extent of those damages.

      d.   The proper form of injunctive and declaratory relief.

150.   **Typicality:** Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members.   Plaintiff's and Class members' claims all arise out of Defendants' misrepresentations, omissions, and unlawful and deceptive acts and practices related to the Multiplan agreements.

151.   **Adequacy:** Plaintiff has no interest that conflicts with the interests of the Class and is committed to pursuing this action vigorously.   Plaintiff has retained counsel competent and experienced in complex class action litigation.   Accordingly, Plaintiff and its counsel will fairly and adequately protect the interests of the Class.

152.   **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.

The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be almost impossible for individual Class members to effectively redress the wrongs done to them.  Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties and to the court system due to the complex legal and factual issues of this action.  Individualized rulings and judgments could result in inconsistent relief for similarly situated Class members.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### FRAUD
### Against all Defendants

153.   Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

154.   Defendants provided each patient with an insurance card which clearly displayed a Multiplan insignia.

155.   Defendants represented through this insignia and emblem which Defendants intentionally chose to put on their insurance cards that Defendants would utilize the Multiplan Network.

156.   Defendants placed the insignia and emblem on an obvious portion of the insurance cards so that Plaintiff and other Class members would see the emblem and believe that Multiplan would be utilized in the payment of any bill submitted by Medical Provider or Class members.

157.   Despite the clear intent communicated by Defendants by displaying the Multiplan insignia and emblem, Defendants do not pay Plaintiff and other Class members in accordance with their Multiplan Agreement.

158.   Defendants falsely represented to Plaintiff and the Class that payment for services would be based on their Multiplan Agreement.

159.   Defendants knew that any payment made to Plaintiff and other Class members would not be made based on their Multiplan Agreement and would instead be made at a far lesser rate.

160.   Defendants prominently displayed the Multiplan symbol with the intent that Plaintiff and other Class members would provide services to Defendants' insureds.

161.   Plaintiff and other Class members justifiably and actually relied on Defendants' misrepresentation regarding Defendants' use of Multiplan and accordingly, provided the services to each patient.

162.   Plaintiff and other Class members have been damaged in not receiving payment according to their Multiplan Agreement.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### Against All Defendants

163.   Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

164.   Defendants provided each patient with an insurance card which clearly displayed a Multiplan insignia.

165.   Defendants represented through this insignia and emblem which Defendants intentionally chose to put on their insurance cards that Defendants would utilize the Multiplan Network.

166.   Defendants placed the insignia and emblem on an obvious portion of the insurance cards so that Plaintiff and other Class members would see the emblem and believe that Multiplan would be utilized in the payment of any bill submitted by them.

167.   Despite the clear intent put forth by Defendants by displaying the Multiplan insignia and emblem, Defendants do not pay Plaintiff and other Class members in accordance with their Multiplan Agreement.

168.   Defendants knew or could have been reasonably sure that they were never going to pay Plaintiff or other Class members appropriately under their Multiplan agreement, despite the clear intent communicated by Defendants in displaying the insignia and emblem on each patient's insurance card.

169.   Plaintiff and other Class members justifiably and actually relied on Defendants' placement of a Multiplan emblem as a statement that Defendants would be paying their bill pursuant to their Multiplan agreement, as that is the common practice of insurers like Defendants in the industry when displaying a Multiplan emblem or insignia on their insurance card.

170.   Plaintiff and other Class members have been damaged in being paid far less than the billed charges owed to them under their Multiplan agreement.

171.   In light of Defendants' misrepresentation as to the use of a Multiplan agreement in paying for medical bills and of Plaintiff and other Class members' justifiable and actual reliance thereon, Defendants are obligated to pay Plaintiff and other Class members the correct billed charges with interest pursuant to their Multiplan agreement.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

### Against All Defendants

172.   Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

173.   California's Unfair Competition Law (the "UCL"), codified at California Business & Professions Code Section 17200 *et seq.*, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

174.   In the course of conducting their business, Defendants violated the UCL by, among other things, (1) misrepresenting to Plaintiff and other Class members that payment for medical services rendered to patients insured by Cigna who had insurance cards bearing the Multiplan insignia would be made in accordance with Plaintiff's and other Class members' Multiplan agreement; (2) failing to pay Plaintiff and other Class members the appropriate amounts for medical services rendered to patients insured by Cigna who had insurance cards bearing the Multiplan insignia in accordance with Plaintiff's and other Class members' Multiplan agreement.

175.   These deceptive business practices constitute "fraudulent" practices under the UCL.  As noted in more detail above, Defendants represented that with respect to Plaintiff and other Class members, medical services rendered to patients covered by Cigna who had insurance cards bearing the Multiplan insignia would be paid by Defendants in accordance with Plaintiff's and other Class members' Multiplan agreement.  Plaintiff and Class Members justifiably, reasonably, and actually relied on Defendants' representations that payment for medical services to such patients would be made in accordance with their Multiplan agreement. Defendants' business practices were and are likely to deceive members of the public, because customers such as Plaintiff reasonably and actually expected that they would be paid in accordance with their Multiplan agreement—not that they would be paid far less than what their Multiplan agreement provided.

176.   In addition, Defendants' deceptive and misleading practices constituted "unfair" business acts or practices under the UCL.  Defendants' overcharging of customers and misrepresentations about the nature of the payment under their Multiplan agreement constitutes immoral, unethical, oppressive, or unscrupulous activities that are substantially injurious to Plaintiff and other Class members, and

whatever utility, if any, that Defendants derived from these practices is outweighed by the resulting deception and overcharges.

177.   There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

178.   As a result of Defendants' deceptive and misleading conduct, Plaintiff and the Class have been harmed and have been overcharged under the Multiplan agreement.

179.   As a result of their deception, Defendants have been able to reap unjust revenue and profits in violation of the UCL.

180.   Unless restrained and enjoined, Defendants will continue to overcharge customers and misrepresent the nature of the payment to be made under the Multiplan agreement.   Accordingly, injunctive relief is appropriate for Plaintiff and Class Members.

181.   As a result of the above, Plaintiff and the other Class Members seek restitution and disgorgement of all money unlawfully obtained from members of the Class, as well as injunctive relief and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

182.   Plaintiff and the other Class Members lack an adequate remedy at law because, unless enjoined as requested herein, Defendants will continue to mis-process claims submitted by Plaintiff and the Class, and because damages will not capture the full harm done to Plaintiff and the Class, due to difficulties in quantifying the harm inflicted by Defendants' unfair practices, including the staff time incurred in attempting to obtain appropriate payment and attendant lost opportunities.  Restitution and disgorgement are necessary because Defendants were unjustly enriched by their unfair conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for relief and judgment against Defendants as follows:

1.       An Order determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

2.       An Order designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative Class;

3.       An Order directing proper notice to be distributed to the putative Class at Defendants' expense;

4.       An Order finding that Defendants misrepresented the nature and amounts of its payments under the Multiplan agreements it had with Plaintiff and the putative Class members;

5.       An Order awarding compensatory damages in Plaintiff's favor and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

6.       An Order enjoining Defendants from continuing to engage in the unlawful conduct described herein;

7.       An Order requiring disgorgement of all money unlawfully obtained from members of the Class, and restitution thereof;

8.       An Order awarding punitive damages to Plaintiff and the Class;

9.       An Order awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

10.       Such other relief as the Court may deem just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of any and all issues in this action so triable of right.

Dated: June 8, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: */s/Jonathan M. Rotter*
Jonathan M. Rotter
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: jrotter@glancylaw.com
Email: npang@glancylaw.com

Jonathan A. Stieglitz
**THE LAW OFFICES OF**
**JONATHAN A. STIEGLITZ**
11845 Olympic Blvd., Suite 800
Los Angeles, CA 90064
Telephone: (323) 979-2063
Facsimile: (323) 488-6748
Email: jonathan@stieglitzlaw.com

*Attorneys for Plaintiff and the Putative Class*